IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   10-cv-01375-REB-KLM

JOSHUA E. WINGFIELD,

     Plaintiff,

v.

SHERIFF J. GRAYSON ROBINSON,
NURSE MCMILLAN,
NURSE EPHRAIM,
NURSE LUCIENDA,
NURSE ROY,
ELAYNE MEYER,
DEPUTY CARTER,
DEPUTY EMERSON, and
DR. THOMPSON,

     Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendants Robinson, McMillan, Ephraim,**

**Lucienda, Roy, Meyer, Carter, and Emerson's Motion for Summary Judgment** [Docket

No. 81; Filed April 21, 2011] ("Defendants' Motion")[1] and **Defendant Dr. Thompson's**

**Motion to Join Motion for Summary Judgment** [Docket No. 88; Filed May 5, 2011]

("Thompson's Motion").  On June 6, 2011, Plaintiff filed a forty-six page Response to

_____

[1] Plaintiff incorrectly identifies Defendant Roy McMillan both as "Nurse McMillan" and "Nurse Roy" in his Amended Complaint [Docket No. 25].  *See Motion* [#81] at 1.  Plaintiff also identifies Defendants Efrain Ubinas as "Nurse Ephraim," Lucia Azocar as "Nurse Lucienda," and Elaine Meyer as "Elayne Meyer."  *See id.*  The Court refers to the parties by their actual names in this Recommendation.

Defendants' Motion titled "This is a Response to Defendant's [sic] Motion for Summary Judgment" [Docket No. 105]. Defendants Robinson, McMillan, Ubinas, Azocar, Meyer, Carter, and Emerson filed a Reply on June 15, 2011 [Docket No. 106]. Defendants' Motion is now fully briefed. On June 16, 2011, Plaintiff filed a two-page Response to Thompson's Motion titled "Response to Thompson Motion for Summary Judgment and Motion to Join Response to Robinson, et. al. to Thompson Response" [Docket No. 107]. Defendant Thompson filed a Reply on June 30, 2011 [Docket No. 110]. Thompson's Motion is now fully briefed.

Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1.C, the Motions have been referred to me for recommendation. Having considered the pleadings and the relevant law, the Court is fully advised of the issues presented. For the reasons set forth below, the Court **RECOMMENDS** that Defendants' Motion be **GRANTED** and that Thompson's Motion be **GRANTED.**

## I. Factual Background and Complaint[2]

Plaintiff's case arises from his alleged mistreatment while a pretrial detainee at the Arapahoe County Detention Facility ("ACDF") in Centennial, Colorado. Plaintiff, who is proceeding *pro se*, filed a Complaint pursuant to 42 U.S.C. § 1983 on June 14, 2010 [Docket No. 3] and filed an Amended Complaint on September 8, 2010 [Docket No. 25]. In his Amended Complaint, Plaintiff contends that Defendants violated his constitutional

---

[2] The background facts are primarily taken from the Amended Complaint [Docket No. 25]. The Court will discuss the relevant disputed and undisputed facts where necessary in the analysis of Plaintiff's claims. Further, the Court subsequently addresses additional factual background provided by Defendants that does not appear to be opposed or disputed by Plaintiff.

2

right to be free from cruel and unusual punishment by allegedly acting with deliberate indifference toward a serious medical need and delaying treatment of a hand injury suffered on September 16, 2008. *Amended Complaint* [#25] at 8-14.  Plaintiff contends that the delayed medical treatment led to substantial harm to his finger. *Id.* at 7.

Plaintiff further alleges that Defendants McMillan, Ubinas, Azocar, Carter and Emerson denied him medical care. *Id.* at 9-11.  Specifically, Plaintiff contends that these Defendants acted upon an alleged jail policy that allegedly authorized the denial of medical care unless a prisoner is dying. *Id.* at 8-12.  Plaintiff claims that this alleged policy was implemented by Defendant Robinson, who is Sheriff of Arapahoe County and oversees the operation of ACDF. *Id.* at 8.

After Plaintiff submitted multiple kites[3] and complaints to various prison staff, Plaintiff was referred to Dr. Jill Pitcher for further examination on September 23, 2008.[4] *Meyer Affidavit* [#81-1] at 5.  Dr. Pitcher then referred Plaintiff to Defendant Thompson, a hand specialist at Denver Health Orthopedic Center ("Denver Health"). *Amended Complaint* [#25] at 12; *Meyer Affidavit* [#81-1] at 7.  Defendant Thompson examined Plaintiff on October 17, 2008 and diagnosed him with a detached tendon in his right ring finger which required surgery. *Amended Complaint* [#25] at 12.  Plaintiff alleges that Defendant Thompson informed him "the more time that elapses the more problematic the injury [will] become." *Id.*  Plaintiff's surgery was initially scheduled for November 3, 2008. *Denver*

---

[3] A "kite" is the term used by the ACDF to refer to a written request, complaint, or grievance submitted by a prison inmate.

[4] Dr. Pitcher has been dismissed as a party Defendant due to Plaintiff's inability to effect service as to her pursuant to Fed. R. Civ. P. 4(m). *See Order* [#77] at 3; *Order* [#80] at 2.

*Health Medical Record* [#81-11] at 1.  Plaintiff alleges that the two-week delay between the diagnosis and the initial surgery date evidences Defendant Thompson's unconstitutional intent to harm Plaintiff.  *Amended Complaint* [#25] at 12.  Plaintiff further contends that rather than acting in Plaintiff's best interest, Defendant Thompson was motivated by concern for reimbursement from the prison.  *Id.*

Plaintiff's surgery did not occur on November 3, 2008.  Rather, the surgery was rescheduled due to Plaintiff's transport to attend a court hearing.  *Amended Complaint* [#25] at 6; *Meyer Affidavit* [#81-1] at 9-10.  Plaintiff alleges that Defendants Thompson and Meyer allowed nonmedical personnel to delay Plaintiff's surgery thereby causing Plaintiff further injury.  *Id.* at 10-13.  Plaintiff's surgery ultimately occurred on November 13, 2008.

Pursuant to the Motions, Defendants contend that they are entitled to summary judgment on Plaintiff's claims.  *Defendants' Motion* [#81] at 3-4; *Thompson's Motion* [#88] at 5.  In the alternative, Defendants contend that they are entitled to qualified immunity.  *See, e.g.*, *Defendants' Motion* [#81] at 17.  As a preliminary matter, to the extent that Defendant Thompson seeks to join in the arguments asserted in Defendants' Motion, Thompson's Motion is **granted** and the Court considers Defendant Thompson's entitlement to summary judgment based on arguments raised in both Motions.

## II. Standard of Review

The purpose of a summary judgment motion is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the opposing party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit pursuant to the governing substantive law. *Id.*

The movant must show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). In the context of the pending Motions, where the movants do not bear the ultimate burden of persuasion at trial, the "movant may make [his] prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. After the movant has met his initial burden, the burden shifts to the opposing party to put forth sufficient evidence for each essential element of the claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The opposing party must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to the opposing party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 166 F.3d 869, 875 (10th Cir. 2004).

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991).  However, the Court should not be the *pro se* litigant's advocate, nor should the

Court, "supply additional factual allegations to round out [the *pro se* litigant's] complaint or

construct a legal theory on [her] behalf."  *Whitney v. New Mexico*, 935 F.2d 1170, 1173-74

(10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, *pro se* litigants must follow the

same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277

(10th Cir. 1994).

### III. Analysis

### A.    Plaintiff's Response to Defendants' Motion

As a preliminary matter, Plaintiff's Response to Defendants' Motion [Docket No. 105]

is notarized, but is not sworn under penalty of perjury.  Per the requirements of Fed. R. Civ.

P. 56, unsworn statements are not competent summary judgment evidence.  *Hayes v.*

*Marriott*, 70 F.3d 1144, 1148 (10th Cir. 1995); *Zimmerman v. The CIT Group, Inc.*, No. 08-

cv-00246-ZLW-KLM, 2008 WL 5786438, at *12 (D. Colo Oct. 6, 2008) (holding that

plaintiff's unsworn pleadings are not sufficient to create a genuine issue as to any material

fact and need not be considered by the court); *Gallegos v. Swift & Co.*, 237 F.R.D. 633, 641

(D. Colo. 2006) (noting that courts "need not consider evidence that does not conform to

the . . . requirements" of Fed. R. Civ. P. 56(e)).  Here, regardless that the Response is

notarized, it must contain a statement that it is sworn or stated under penalty of perjury to

be treated as an affidavit for purposes of being used as evidence to establish a genuine

issue of material fact.  *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305-06 (5th Cir.

1988) (finding that a notarized affidavit was not admissible as summary judgment evidence

because it was "neither sworn nor its contents stated to be true and correct nor stated

under the penalty of perjury"); *Stallings v. Ritter*, No. 08-cv-00033-EWN-KLM, 2008 WL 5044549, at *6 (D. Colo. Aug., 22, 2008) (holding that because plaintiff's response did "not make any reference to any of the statements asserted therein as being attested [to] under oath . . . [it was] not sufficient to create a genuine issue as to any material fact, and . . . need not be considered by this court"); *Johnson v. Kurth*, No. 01-3353-KHV, 2002 WL 31855266, at *4 n.9 (D. Kan. Dec. 13, 2002) (finding that unsworn complaint and brief did not constitute admissible evidence for purposes of defendant's motion for summary judgment; the signature of the plaintiff's opposition brief was notarized, but the notary simply certifies that plaintiff signed the document).

Accordingly, because Plaintiff's Response to Defendants' Motion is not signed under penalty of perjury that the information contained therein is "true and correct," it need not be treated as evidence by the Court.[5]  By contrast, Plaintiff's Amended Complaint and Response to Thompson's Motion are signed under penalty of perjury and may be examined as competent summary judgment evidence where appropriate.  Similarly, Plaintiff attaches numerous documents to his Responses and Amended Complaint, each of which may be utilized by the Court, where clearly identified, to resolve the pending Motions.  *Klen v. Colo. State Bd. of Agric.*, No. 05-cv-02452-EWN-CBS, 2007 WL 2022061, at *23 (D. Colo. July 9, 2007) (recognizing that the court "has neither the duty nor the inclination to scan the entire record in search of support for Plaintiff's . . . claim."); *see also Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013

---

[5] While Plaintiff's Response to Defendants' Motion is not deemed to be an affidavit for purposes of providing evidence to defeat summary judgment, the Court nevertheless considers the arguments raised therein.

(1992) ("[The Court] will not search the record in an effort to determine whether there exists . . . evidence which might require submission of the case to a jury."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs [and court records].").

### B.    Eighth Amendment Deliberate Indifference

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend VIII. As such, it requires that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and [that they] must 'take reasonable measure to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The Court's analysis of Plaintiff's Eighth Amendment claim involves both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

As to the objective component, the Court considers whether Plaintiff has been deprived of a sufficiently basic human need, i.e., an extreme deprivation. "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' 'only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations omitted). Here, the issue is the medical care, and delay thereof, that was provided to the Plaintiff. "[A] medical need is considered 'sufficiently serious' if the condition 'has been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recommend the necessity for a doctor's attention.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2001)).

To the extent that Plaintiff also raises an issue related to delay in receiving medical

treatment, the Tenth Circuit has held that "(1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition" may "constitute deliberate indifference in a prison medical case." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2008)). However, "[d]elay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210 (noting that "not every twinge of pain suffered as the result of delay in medical care is actionable").

As to the subjective component, the Court considers whether Defendants intended the deprivation, i.e., acted with deliberate indifference to the harm that could result. Deliberate indifference can only be proved by showing that Defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837.

As a preliminary matter, it should be noted that an inmate's difference of opinion concerning the medical treatment that he received or did not receive does not generally support a claim for cruel and unusual punishment. *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). A "prisoner's right is to medical care – not to the type or scope of medical care which he personally desires." *Henderson v. Sec'y of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975) (citation omitted). To the extent that Plaintiff, in his opinion, asserts that Defendants did not satisfactorily perform their duties in timely authorizing surgery, "such a difference of opinion [arguably] amounts to a medical malpractice claim . . . [which] cannot be the basis for a federal [§ 1983] action . . . . [A] medical malpractice claim does not become a constitutional violation simply because the plaintiff is a prisoner." *Pearson v. Simmons*, No.

9

Civ.A. 95-3006-GTV, 1998 WL 154552, at *2 (D. Kan. Mar. 17, 1998) (citations omitted) (noting that inmate's allegation that defendants were deliberately indifferent to his medical injury based upon a disagreement about the level of care he received for that injury did not state an Eighth Amendment claim).

### 1.   Defendants McMillan, Ubinas, Azocar, Carter, Emerson, and Robinson

Plaintiff alleges that the above-named Defendants violated the rights guaranteed to him by the Eighth Amendment by intentionally and unreasonably depriving him of and delaying required medical treatment to a hand injury which resulted in substantial harm. As a preliminary matter, the parties do not address whether Plaintiff's hand injury can be viewed as an objectively serious injury.  Assuming for purposes of this Recommendation that the injury was objectively serious, the Court addresses the heart of the parties' dispute. Specifically, Defendants argue that none of the conduct attributable to them can be viewed as deliberately indifferent.

Defendants contend that they provided appropriate medical treatment for Plaintiff's hand injury. *Defendants' Motion* [#81] at 16.  Specifically, they argue that they provided reasonable medical care based on the circumstances as they knew them to be and that any delay in the provision of surgery was reasonable and did not cause any substantial harm. *Id.*  In support of their position, Defendants have submitted several affidavits detailing their encounters with and treatment of Plaintiff.

It appears to be undisputed that Plaintiff injured his right ring finger on September 16, 2008. *Amended Complaint* [#25] at 8.  For the following few weeks, Plaintiff submitted multiple kites, each of which was responded to promptly by Defendants.  *Amended*

10

*Complaint* [#25] at 6; *Meyer Affidavit* [#81-1] at 4-10.   A review of Defendants' evidence

reveals that Plaintiff received the following medical care and/or instruction.  On September

17, 2008, Plaintiff informed a nurse of his injury and asked, "what can I tell you happened

to my finger so that I can blame this place?"   *Meyer Affidavit* [#81-1] at 4.  The nurse, who

is not identified here, told Plaintiff to submit a kite requesting medical care.   *Id.*   On

September 19, 2008, Defendant McMillan, who is a nurse, responded to an undated kite

submitted by Plaintiff claiming that his finger was broken. *Meyer Affidavit* [#81-1] at 4.  That

same day, Defendant McMillan examined Plaintiff and noted that he had decreased mobility

and pain when the finger was bent and approved Plaintiff to be seen by Dr. Pitcher.  *Id.*;

*see also McMillan Affidvait* [#81-25] at 2-3 (noting that "because Plaintiff simply reported

the finger to be painful when bent, [he] judged that the injury did not require immediate

treatment and placed Plaintiff on the list to be seen by the facility's physician").  Three days

later, Defendants Carter and Emerson, who are prison deputies and have no medical

training, each received a kite from the Plaintiff.  *Id.* at 5.  Both Defendants responded

immediately, advising Plaintiff that he was scheduled to be seen by a doctor.  *Id.*  On

September 26, 2008, Defendant Ubinas, who is a nurse, responded to a kite from Plaintiff,

referring Plaintiff to Dr. Pitcher and informing him that arrangements had been made for

him to see a specialist.  *Id.* at 6.

In addition, a review of Defendants' evidence reveals continual treatment by

Defendants and other facility medical personnel until the date of Plaintiff's surgery on

November 13, 2008.  For example, on October 4, 2008, Defendant Ubinas responded to

another kite filed by Plaintiff where he complained of the need to see a specialist and that

he was being denied treatment.  *Meyer Affidavit* [#81-1] at 7.  Defendant Ubinas notified

Plaintiff in writing that he was scheduled to see a physician at Denver Health later in the month. *Id.* In different kites received by Defendants Carter and Ubinas dated October 21, 2008, Plaintiff complained that he was being denied treatment and asked that the surgery on his finger be expedited. *Id.* at 8. Both Defendants responded to the kites immediately and passed the complaint to a person with medical training, here Defendant Meyer, who responded to Plaintiff's request for immediate medical care. *Id.* On October 23, 2008, Defendant Azocar, who is a nurse, responded to a kite submitted by Plaintiff informing him that "action is underway [and to] follow [Dr. Pitcher's] instructions." *Plaintiff's Supporting Affidavits* [#105-1] at 11. A review of the evidence indicates that Defendant Azocar only sparingly interacted with Plaintiff through responding to kites and the administration of medication before surgery. *Azocar Affidvait* [#81-27] at 2.

On October 26, 2008, Defendant Ubinas received another kite from Plaintiff stating that his finger was hurt and that he wanted help. *Meyer Affidavit* [#81-1] at 9. Defendant Ubinas referred the complaint to Dr. Pitcher, who conferred with a nurse regarding Plaintiff, "chart[ing] that since there was no recommendation from the orthopedist for a splint, and since surgery had been scheduled, there was nothing more that could be done for the finger aside from buddy-tape it with or without a tongue depressor for comfort, which Mr. Wingfield had already refused." *Id.* On October 29, 2008, Defendant Ubinas received another kite from Plaintiff stating that his finger was "jammed up again," swollen, and discolored. *Id.* In response, Defendant Ubinas arranged for Plaintiff to be seen by Defendant McMillan who placed him on a pain protocol, and prescribed Tylenol for seven days. *Id.* As will be addressed below, none of Defendants' interactions with or treatment of Plaintiff supports Plaintiff's allegation that Defendants ignored Plaintiff's hand injury or

12

that they refused to treat him because of an alleged policy enacted by Defendant Robinson.

### a.   Defendant Robinson

To the extent that Plaintiff alleges that Defendants denied him medical treatment in furtherance of Defendant Robinson's alleged policy not to provide inmates medical care unless they are dying, after review of the evidence, no proof of such a policy exists. Moreover, Defendants aver that their conduct does not evidence any sort of compliance with the alleged policy. *Ubinas Affidavit* [#81-29] at 3 ("I never told Plaintiff that the injury to his finger was not an emergency because he was not dying."); *Azocar Affidavit* [#81-27] at 3 ("I also never told Plaintiff that the injury to his finger was not an emergency because he was not dying."); *McMillan Affidavit* [#81-25] at 3 ("I also never told Plaintiff that the injury to his finger was not an emergency because he was not dying."). In fact, Defendants' ongoing and responsive treatment of Plaintiff's hand injury represents the antithesis of an alleged policy to deny inmates treatment unless death is imminent. As such, to the extent that Plaintiff's claim against Defendant Robinson is premised on the implementation of such a policy, it appears to be insufficient. Accordingly, I find that Defendants have met their burden to show the absence of evidence to support Plaintiff's claim that Defendant Robinson enacted a policy to deprive Plaintiff of medical treatment.

The burden therefore shifts to Plaintiff to put forth sufficient evidence to demonstrate a genuine issue of material fact. Plaintiff fails to offer any evidence that a policy to deny him medical care exists other than his own conclusory statements. For example, in Plaintiff's unverified Response to Defendants' Motion, Plaintiff merely states that "[e]ach of the Defendants adhered to a policy they knew allowed and encouraged illegal acts." *Response* [#105] at 2. While Plaintiff also states an intention to "call witnesses who have

13

stated this is the policy concerning emergencies" . . . and that "Defendants are using legal wrangling to try to fool the Court into condoning the Sheriff's unlawful policy," *id.*, the time for providing such evidence was now.  Summary judgment cannot be defeated based on speculation about what a party intends to present as evidence at trial.  *See Bones*, 366 F.3d at 875.

To the extent that Plaintiff intends to pursue a claim against Defendant Robinson on the basis of his supervisory position over other Defendants, Plaintiff's claim is likewise insufficient.  A defendant is personally involved in an alleged constitutional violation only if there is an "affirmative link" between his conduct and the alleged violation.  *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).  Because of the "affirmative link" requirement, a defendant in a position of general supervisory authority cannot be held vicariously liable for alleged constitutional violations committed by his subordinates.  *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights.").

Courts have explained that a defendant in a supervisory position was personally involved in an alleged constitutional violation committed by his subordinates in two situations.  First, the supervisor was personally involved when he personally directed his subordinates to take the action that resulted in the alleged constitutional violation.  *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992).  Second, the supervisor was personally involved when he had actual knowledge that his subordinates were committing the alleged constitutional violation and he acquiesced in its commission.  *Id.* (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (stating that

14

supervisor liability requires "allegations of personal direction or of actual knowledge and acquiescence")); *see also id.* at 1399 n.11 (holding that to show an affirmative link between the defendant supervisors's conduct and unconstitutional behavior by his subordinates, a plaintiff must establish "an intentional, conscious, and deliberate act by the defendant participating in, or knowingly acquiescing in, the unconstitutional behavior."). The Court of Appeals for the Tenth Circuit has explained personal involvement by knowing acquiescence as follows: "In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior." *Serna*, 455 F.3d at 1151.

The Supreme Court has recently called into question the notion of personal involvement by knowing acquiescence. In *Ashcroft v. Iqbal*, 129 S. Ct. at 1949, the Court suggested that the simple fact that a supervisor knew of and acquiesced in a constitutional violation committed by his subordinates does not establish that he was personally involved in the violation. The Supreme Court held as follows:

> [Respondent] argues that, under a theory of "supervisory liability," petitioners can be liable for "knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees." That is to say, respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument. Respondent's conception of "supervisory liability" is consistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a *Bivens* action-the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

*Id.* at 1949.

*Iqbal* has been interpreted by the Tenth Circuit as narrowing the scope of what

15

constitutes "personal involvement" by a supervisor in an alleged constitutional violation committed by his subordinates:

> [G]iven a recent Supreme Court pronouncement, the basic concept of § 1983 . . . supervisory liability itself may no longer be tenable. *See Iqbal*, 129 S. Ct. at 1949 ("In a § 1983 suit or a *Bivens* action-where masters do not answer for the torts of their servants-the term 'supervisory liability' is a misnomer."). After *Iqbal*, circuits that had held supervisors liable when they knew of and acquiesced in the unconstitutional conduct of subordinates have expressed some doubt over the continuing validity of even that limited form of liability. *See Bayor v. Monroe County Children & Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009); *Maldonado v. Fontanes*, 568 F.3d 263, 274 n.7 (1st Cir. 2009).

*Arocho v. Nafziger*, 367 Fed. Appx. 942, 947 n.4 (10th Cir. 2010). Accordingly, to establish that a defendant in a supervisory position was personally involved in an alleged constitutional violation by his subordinates, a plaintiff must show that the defendant did more than simply acquiesce in the violation.[6]

Plaintiff's bare allegation that Defendant Robinson "instructed the jail staff to delay treatment of injuries that are not deemed emergencies . . . [and] to only consider 'dying' as an emergency," is not supported by competent summary judgment evidence. While the alleged policy is mentioned in the Amended Complaint which is signed under penalty of perjury, the Court need not accept conclusory allegations set forth in an affidavit for which there is no other evidentiary support. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Bones*, 166

---

[6] The Courts of Appeal have not provided clear guidance regarding precisely what a plaintiff must show to demonstrate more than mere acquiescence by the defendant. But *Iqbal* and *Serna* indicate that the defendant's state of mind is the linchpin of the analysis. In *Iqbal*, the Supreme Court suggested that a defendant who acquiesced in a constitutional violation committed by his subordinates was personally involved in the violation only if his acquiescence was motivated by a "purpose" to allow or further the violation. *See Iqbal*, 129 S. Ct. at 1949. In *Serna*, the Court of Appeals for the Tenth Circuit suggested that a defendant supervisor who acquiesced in a constitutional violation was personally involved in that violation only if he shared the same "state of mind" with his subordinates who actually committed the violation. *See* 455 F.3d at 1151.

F.3d at 875.  A review of Defendants' evidence does not support a claim that Defendant Robinson had the "purpose" to negatively impact this Plaintiff's medical condition, *Iqbal*, 129 S. Ct. at 1949, or a "state of mind" to intentionally deprive this Plaintiff of proper medical care.  *See Woodward*, 977 F.2d at 1400; *see supra* note 7.  In fact, the absence of evidence indicating Defendant Robinson's involvement in any matter related to Plaintiff outside of the alleged policy, and the absence of evidence demonstrating that any Defendants were acting in furtherance of any policy, supports a finding that Defendant Robinson did not intend to harm Plaintiff or direct any Defendants to do so.

The Court concludes that Plaintiff has failed to carry his burden of putting forth sufficient evidence supporting the existence of an alleged policy implemented by Defendant Robinson.  Moreover, because Plaintiff has failed to establish that Defendant Robinson was personally involved or that he directed Defendants to take any action to specifically harm this Plaintiff, Plaintiff cannot prevail on his deliberate indifference claim.  This holding necessarily means that Defendant Robinson in entitled to qualified immunity regarding any request for monetary damages.[7]  *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001); *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) ("The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly establish constitutional rights of which a reasonable person would have known.'" (citation omitted)); *see also Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009) (holding that although qualified immunity

---

[7] To the extent that Plaintiff also seeks injunctive relief to prevent further enforcement of Defendant Robinson's alleged policy, this request must also be denied given that I find that on the evidence presented no reasonable juror would find that such a policy exists.

determination involves a two-part inquiry, if Plaintiff fails either inquiry, no further analysis need be undertaken and qualified immunity is appropriate).    Accordingly, the Court recommends that summary judgment be entered in favor of Defendant Robinson.

### b.    Defendants Carter and Emerson

With respect to nonmedical Defendants Carter and Emerson, no evidence demonstrates that either Defendant engaged in conduct sufficient to establish their participation in the alleged constitutional violation.    Defendants Carter and Emerson are both employed as ACDF deputies and provide direct supervision over inmates within the facility and security for the inmates and staff.    *Carter Affidavit* {#81-31} at 1; *Emerson Affidavit* [#81-33] at 1.    Their only involvement in this case appears to be their participation in the grievance process, where they either informed Plaintiff of upcoming medical exams or referred Plaintiff to appropriate medical personnel.    In this regard, Defendants' grievance responses are insufficient to establish deliberate indifference to a serious medical need. *Larson v. Meek*, 240 Fed. Appx. 777 (10th Cir. 2007) ("The denial of grievances alone is insufficient to establish personal participation in the alleged constitutional violation"); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (holding that mere participation in the grievance process, without any connection to the violation of constitutional rights, generally is insufficient to establish personal participation).

Moreover, given these Defendants' lack of medical training, they cannot be held liable unless Plaintiff's grievances put them on notice of an emergent medical need of which they ignored.    *Ankeney v. Hartley*, No. 09-cv-02085-CMA-MJW, 2010 WL 2004777, *6 (D. Colo. Mar. 29, 2010) (citing *Bond v. Aguinaldo*, 228 F. Supp. 2d 918, 920-21 (N.D. Ill. 2002) ("Because deliberate indifference requires actual knowledge of a serious risk of

harm, [Plaintiff] may not sue nonmedical personnel who denied his grievances.")); *Thomas v. Ortiz*, No. 07-cv-00400-WDM-MEH, 2007 WL 3256708, at *3-4 (D. Colo. Nov. 1, 2007) (holding that prison official deriving his knowledge of Plaintiff's alleged injury from grievance process is not personally liable unless he was directly involved in the alleged unlawful treatment). Here, Defendants' involvement in the grievance process, including their responsiveness and referrals, does not evidence the type of neglect necessary to hold them constitutionally liable for Plaintiff's alleged injuries. *Kikumura v. Osagie*, 461 F.3d 1269, 1293 (10th Cir. 2006) ("it is not enough to allege that [the] prison official failed to alleviate a significant risk that [they] should have perceived but did not . . . [Rather,] a prisoner must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."). For example, on September 22, 2008, Defendant Carter responded to a kite from the Plaintiff asking when he would see a doctor for his injuries. *Carter Affidavit* [#81-31] at 2. In response, pursuant to "practices in place in the Detention Facility, [Defendant Carter] relayed [Plaintiff's] kite to the medical staff," which was subsequently addressed by medical staff the same day. *Id.*

The Court finds that Defendants have established a lack of evidence to support an allegation that Defendants Carter and Emerson were deliberately indifferent to Plaintiff's medical needs. Therefore, the burden shifts to Plaintiff to provide sufficient evidence to the contrary. However, Plaintiff provides no contradicting evidence to prompt a different result. Moreover, as the Court noted above, to the extent that Plaintiff's allegation against these Defendants is based upon their following an alleged policy authorizing the denial of medical care, there is no evidence that such a policy exists. Because Plaintiff has not demonstrated

19

that Defendants were put on notice of an immediate medical need of which they ignored, he cannot establish an Eighth Amendment violation. This holding necessarily entitles these Defendants to qualified immunity. *Saucier*, 533 U.S. at 200-01; *Boles*, 486 F.3d at 1180. Accordingly, the Court recommends that summary judgment be entered in favor of Defendants Carter and Emerson.

### c.   Defendants McMillan, Ubinas, and Azocar

Plaintiff contends that Defendants McMillan, Ubinas and Azocar, who are all nurses and either directly treated Plaintiff or responded to his grievances, unreasonably denied him appropriate medical care. However, careful consideration of Plaintiff's medical history and chronology of events does not evidence a subjective intent by any of these Defendants to disregard Plaintiff's medical needs. For example, from September 19, 2008 to November 11, 2008, Defendants responded to grievances, examined Plaintiff, and prescribed treatment upwards of fifteen times. *See*, *e.g.*, *Self*, 439 F.3d at 1232 (noting that continual treatment with the symptoms presented does not support an inference of deliberate indifference); *Franco-Calzada v. United States*, 375 Fed. Appx. 217, 220 (3rd Cir. 2010) (recognizing that continued treatment of a federal prisoner with first-aid and antibiotics after fracturing two fingers, arranging evaluation of his injuries by a specialist, pre-operative visits, and surgery does not evidence deliberate indifference). Moreover, as noted above, there is no evidence to support Plaintiff's contention that Defendants were acting pursuant to an alleged policy to deny him treatment. After reviewing Defendants' Motion and supporting affidavits in their entirety, the Court finds that the Defendants have carried their initial burden of demonstrating the absence of evidence that Plaintiff was denied treatment for his injured finger. *See Adler*, 144 F.3d at 671 (The "movant may make its prima facie

demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.").

To the extent that Plaintiff also alleges that these Defendants unreasonably delayed the provision of surgery, there does not appear to be any conduct attributable to these Defendants that contributed to Plaintiff's delayed surgery. Moreover, as will be discussed later, even if Defendants were responsible for the alleged delay in medical treatment, no evidence suggests that Plaintiff was substantially harmed as a result. *See infra* pp. 26-30.

Because Defendants carried their initial burden to show the absence of evidence against them, the burden shifts to Plaintiff to put forth sufficient evidence such that a reasonable jury could find that Defendants unreasonably denied him treatment and delayed surgery such that substantial harm resulted. *See Anderson*, 277 U.S. at 248. Plaintiff offers no competent summary judgment evidence in response to Defendants' Motion to rebut the objective medical evidence and sworn statements of each Defendant that the Plaintiff was provided appropriate treatment. In fact, in Plaintiff's Response to Defendants' Motion, he admits to meeting with or being treated by these Defendants in response to his complaints and acknowledges their early diagnosis and referrals to see a doctor or specialist. *Response* [#105] at 8. Despite Plaintiff's conclusory and unsubstantiated assertions that the evidence should nevertheless be viewed as proof that Defendants "refused [him] treatment" or that "Defendants did nothing," the record reflects that Defendants provided Plaintiff ample treatment. *See id.* at 8.

In reality, instead of providing evidence that Defendants were deliberately indifferent to his medical needs, Plaintiff expresses mere dissatisfaction with the type of treatment that

21

he received.  *See id.*  Although Plaintiff attaches numerous grievance forms and kites to his Response in an attempt to show that Defendants displayed "a pattern of deliberate neglect and deliberate indifference," the grievances do not support this conclusion. *Response* [#105] at 2.  In fact, the grievances display a measured and attentive response from Defendants.  Additionally, although Plaintiff believes that Defendants did not treat him because of an alleged policy not to treat inmates unless they have a life-threatening injury, *Complaint* [#25] at 6, 9-12, Defendants deny that such a policy exists and that they followed it.  *Azocar Affidavit*, [#81-27] at 3; *Ubinas Affidavit*, [#81-29] at 3, *McMillan Affidavit*, [#81-25] at 3.  Plaintiff's conclusory allegations to the contrary are unsupported by any evidence and contradicted by the factual record.  *Id.*  Further, with regard to Plaintiff's contention that Defendants unreasonably delayed in providing him treatment, Plaintiff provides no competent summary judgment evidence to show that any delay led to substantial harm. *See infra* pp. 26-30.

The Court concludes that Plaintiff has failed to carry his burden of putting forth sufficient evidence that these Defendants denied or delayed medical treatment for his hand injury, or that he suffered substantial harm from the alleged delay.  On this evidentiary record, no reasonable juror would disagree that Plaintiff was treated with appropriate medical care for his injury and that these Defendants were not deliberately indifferent to Plaintiff's serious medical needs.  Because Plaintiff's allegations fail to satisfy the subjective component of a deliberate indifference claim, I find that the Eighth Amendment is not implicated.[8]   This holding necessarily entitles each Defendant to qualified immunity.

---

[8] To the extent that Plaintiff relies upon evidence tending to show that Defendants did not immediately treat Plaintiff or did not treat him in a way preferred by Plaintiff, such a claim

*Saucier*, 533 U.S. at 200-01; *Boles*, 486 F.3d at 1180.  Accordingly, the Court recommends that summary judgment be entered in favor of Defendants McMillan, Ubinas and Azocar.

### 2.    Defendants Thompson and Meyer

Plaintiff alleges that both Defendants Thompson and Meyer unreasonably delayed scheduling surgery for Plaintiff's hand injury in violation of the Eighth Amendment. *Amended Complaint* [#25] at 10-12.    Specifically, Plaintiff contends that Defendant Thompson allegedly acted with deliberate indifference first by intentionally delaying medical treatment when he scheduled surgery two weeks after examination of Plaintiff's hand and then allowed the surgery to be rescheduled to November 13, 2008.  *Id.* at 12.  Plaintiff contends that Defendant Meyer allegedly acted with deliberate indifference by intentionally delaying medical treatment when she allowed the surgery to be rescheduled by nonmedical personnel.  *Id.* at 10-11.

Defendants contend that the delay in scheduling and conducting the surgery was reasonable and does not reflect a subjective intent to harm the Plaintiff.  *Defendants'*

---

amounts only to a potential medical malpractice claim, not a constitutional violation.  *Pearson*, 1998 WL 154552, at *2.  Similarly, a complaint that a physician has been negligent in diagnosing or treating a medical condition is not enough to state a valid claim under the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *see also Duffield v. Jackson*, 545 F.3d 1234 (10th Cir. 2008) (noting that the decision that a prisoner's medical condition requires a specialist is a decision about the course of treatment, and negligent diagnosis or treatment of a medical condition does not constitute a medical wrong under the Eighth Amendment).  So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met.  *Self*, 439 F.3d at 1233.  The subjective inquiry is limited to consideration of the medical personnel's knowledge at the time he prescribed treatment for the symptoms presented, not to the ultimate treatment necessary.  *See generally Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005).  As such, Plaintiff's Amended Complaint and supporting attachments are deficient in providing evidence that any Defendant, at the time of the prescribed treatment for the symptoms presented, was deliberately indifferent to a serious medical need.

*Motion* [#81] at 16.  In support of their position, Defendants Thompson and Meyer submit affidavits evidencing their involvement in Plaintiff's treatment.   On October 17, 2008, Defendant Thompson, a licensed Physician's Assistant, evaluated Plaintiff's right hand and scheduled him to have surgery on November 3, 2008.  *Thompson Affidavit* [#88-1] at 2-3. Defendant Thompson avers that it is customary for treatment approval to be delayed and, in his medical judgment, he did not view the delay to be a serious concern for Plaintiff. *Thompson Affidavit* [#88-1] at 2; *Thompson Motion* [#88] at 5.  Defendant Thompson further states that scheduling surgery on November 3, 2008 was appropriate under the circumstances.  *Thompson Affidavit* [#88-1] at 3.  Specifically, Defendant Thompson avers that he did not knowingly ignore a substantial risk of harm or disregard that risk by failing to take reasonable measure to abate it.  *Thompson Affidavit* [#88-1], at 2; *Thompson Motion* [#88] at 5.   In fact, affidavits submitted by Defendants Thompson and Meyer indicate that surgery was scheduled immediately after treating the Plaintiff and was set on the soonest practicable date.  *Thompson Affidavit* [#88-1] *at 3*; *Meyer Affidavit* [#81-1] at 8.

Similarly, Defendants Thompson and Meyer contend, and the evidence contained in the record supports, that the rescheduling of Plaintiff's surgery does not evidence a subjective intent by them to harm the Plaintiff.  A review of the evidence demonstrates that the reason for rescheduling Plaintiff's surgery was out of both Defendants' control. *Thompson Affidavit* [#88-1] at 3.  Defendant Meyer, who is the ACDF Health Services Administrator, acts as a supervisor of all nondoctor medical staff and oversees the overall level of health care services provided to inmates. *Meyer Affidavit* [#81-1] at 1-2. Defendant Meyer avers that she was not involved with the rescheduling of Plaintiff's surgery.  *Id.* at

24

3.  The record reflects that Plaintiff was transferred to the prison infirmary in preparation for transportation to Denver Health for surgery on November 2, 2008.  *Id.* at 10.  However, on November 3, 2008, the infirmary was notified that the surgery was to be rescheduled and Plaintiff was returned to his cell.  *Id.* at 10.  Defendants produced medical records and a Correctional Care Tracking Log indicating that Plaintiff's surgery was rescheduled due to transportation issues.  *Correctional Care Tracking Log* [#88-3].  Plaintiff alleges these transportation issues arose from a previously scheduled court appearance.  *Amended Complaint* [#25] at 6.  In his expert opinion, Defendant Thompson avers that it is not uncommon for non-life threatening surgical appointments of incarcerated patients to be rescheduled for reasons such as transportation issues.  *Thompson Affidavit* [# 88-1] at 2. Moreover, Defendant Thompson avers that he was not in any way involved in rescheduling Plaintiff's surgery date nor was he concerned that the delay had the potential to harm Plaintiff.  *Thompson Affidavit* [#88-1] at 3.  The Court finds that Defendants have demonstrated the absence of evidence indicating that they had a subjective intent to unreasonably delay treatment of Plaintiff's finger injury.  *See Adler*, 144 F. 3d at 671.

Finally, Defendants contend that regardless of their subjective intent, there is no evidence that Plaintiff was substantially harmed as a result of any delay in treatment.  A review of the evidence reveals that following Plaintiff's November 13, 2008 surgery, Plaintiff had full mobility of his repaired finger during post-surgery examinations, as well as during medical examinations nearly two years after the surgery.  *Meyer Affidavit* [#81-1] at 11-13. Specifically, on November 5, 2010, Plaintiff was examined by a doctor at Denver Health. *Defendants' Motion* [#81] at 12.  During the examination, Plaintiff asked the doctor whether he would have had a better result if his surgery had been performed earlier.  *Denver Health*

25

*Medical Record* [#81-23] at 1.  The medical records reflect that the doctor informed Plaintiff that "he has a good result because of the fact that functional ability of his hand is near complete . . .  is able to write his name with that hand . . . [and] appears to be able to do all activities of daily living."  *Id.*  The doctor concluded by "explain[ing] to the patient that, if this would be my hand, I would use it normally for all daily activities; and I would accept the hand as is."  *Id.* at 2.  In addition, Plaintiff also completed a prescribed course of occupational therapy for his repaired finger between January and April 2009, reaching all functional goals.  *Defendants' Motion* [#81] at 11; *Meyer Affidavit* [#81-1] at 11-13.  Finally, Defendants' evidence reveals that after surgery, Plaintiff ignored medical orders to keep his hand in a splint and to refrain from use for a prescribed period of time, despite receiving warnings about removing the splint and the impact that could have on his recovery. *Defendants' Motion* at 11; *Denver Health Outpatient Record* [#81-20].  In this regard, Plaintiff admitted to medical officials "that he had been in fights . . . [and] he had punched, with his hand, reportedly a wall."  *Meyer Affidavit* [#81-1] at 11-13; *Denver Health Medical Records* [#81-23] at 2.  As such, the Court finds that Defendants have demonstrated the absence of evidence indicating that Plaintiff was substantially harmed as a result of an alleged delay in the provision of surgery.

The burden therefore shifts to Plaintiff to put forth evidence supporting his claim such that a reasonable jury could find in his favor.  *See Anderson*, 277 U.S. at 248. Excluding Plaintiff's own conclusory, unverified statements, Plaintiff has offered no admissible evidence that Defendants Thompson or Meyer subjectively intended to harm Plaintiff when scheduling or rescheduling surgery.  In the Amended Complaint, Plaintiff contends that there is a prison protocol for outside medical personnel such as Defendant

26

Thompson to seek approval and funding from the prison before surgically operating on an inmate. *Amended Complaint* [#25] at 12. Plaintiff's deliberate indifference claim against Defendant Thompson apparently results from this Defendant following the alleged protocol. *Id.* Regardless, Defendant Thompson's sworn affidavit indicates awareness of the scheduled surgery date and an acknowledgment that such delay was reasonable under the circumstances. *Thompson Affidavit* [#88-1] at 3.

Moreover, Plaintiff has not directed the Court to consider any evidence or statement that disputes Defendant Thompson's sworn testimony. *Thompson Motion* [#88-1] at 3. While Plaintiff alleges that Defendant Thompson "knew delay increased chances of permanent injury and disfigurement yet chose to delay anyway," *Amended Complaint* [#25] at 12, this conclusory allegation does not create a genuine issue as to any material fact. *See, e.g., Franco-Calzada*, 375 Fed. Appx. at 217 (thirteen day delay in obtaining surgery, alone, was inadequate to allege deliberate indifference); *see also Bones*, 366 F.3d at 875 (holding that conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence). Further, it is contradicted by sworn affidavits and uncontested objective medical evidence of Plaintiff's treatment showing that (1) there was no medical reason to be concerned about delaying Plaintiff's surgery and (2) the surgery was postponed due to a transportation issue outside of Defendants' control. *See Thompson Affidavit* [#88-1] at 2-3. In addition, Plaintiff has failed to produce any credible evidence, outside of unsupported conclusory allegations, that Defendants Meyer or Thompson knew about or acquiesced to the surgery being rescheduled. As a result, I find that Plaintiff has failed to carry his burden of providing evidence that Defendant Thompson or Meyer subjectively intended to delay Plaintiff's treatment in scheduling the

initial surgery for November 3, 2008, or rescheduling the surgery to November 13, 2008. *See*, *e.g.*, *Bieber v. Wisconsin*, 62 Fed. Appx. 714, 716-18 (7th Cir. 2003) (holding that state prison's medical staff could not be held liable for alleged indifference to inmate's serious medical need for knee surgery when his surgery was delayed where it was not clear that the prison's medical staff was responsible for any delays).

Finally, even if Plaintiff's allegations of unreasonable delay against Defendants Thompson and Meyer had merit, which they do not, Plaintiff fails to put forth any competent evidence to show that substantial harm resulted from the delay. Although Plaintiff attempts to dispute Defendants' Motion, affidavits, and the well-supported contention that his hand is fully functional by stating that "a lay person can see [his] hand is seriously debilitated . . . the finger is shriveled and bent . . . [and] it no longer functions properly," *Response* [#105] at 7; *Response* [#107] at 1, his statements are contradicted by the objective medical record and affidavits. Moreover, Plaintiff's Response, and the conclusory, unsubstantiated contentions therein, are not competent evidence capable of defeating summary judgment.

For example, Plaintiff's reliance on an alleged statement by Defendant Thompson that any delay in treatment could result in further complications does not satisfy his burden. *See Amended Complaint* [#25] at 11-12. First, Plaintiff's unsubstantiated characterization of Defendant Thompson's statement is contradicted by sworn testimony provided by Defendant Thompson that, in his medical judgment, neither surgery date was unreasonable, nor did he believe that Plaintiff would be harmed by the delay. Second, even if the Court considered this statement in Plaintiff's favor,[9] the two- to four-week delay

_____

[9] This statement would arguably be admissible as an admission by a party opponent pursuant to Fed. R. Evid. 801(d)(2).

that followed the alleged statement does not evidence the type of neglect necessary to raise constitutional concerns in the absence of evidence tending to show that Plaintiff suffered substantial harm.  As noted above, the evidence reflects that Plaintiff went through surgery without complications and that his hand is fully functional.  *Meyer Affidavit* [#81-1] at 10-14.  Finally, Plaintiff has presented no evidence to refute Defendants' contention that Plaintiff disregarded his doctor's instruction to keep his hand in a splint and to refrain from using his hand for a period of time.  *Meyer Affidavit* [#81-1] at 11-13 (averring that Plaintiff was found hitting walls, getting in fights, and intentionally removing his splint).  Plaintiff's conclusory allegations, especially in light of unrefuted evidence that Plaintiff attempted to self-inflict an injury post-surgery, simply do not show that Plaintiff suffered substantial harm as a result of an alleged delay by Defendants.

In summary, the Court finds that Plaintiff has failed to put forth sufficient evidence to suggest that Defendants Thompson and Meyer knew of or disregarded an excessive risk to Plaintiff's health by scheduling or rescheduling surgery for his injured finger.  Moreover, based on the evidence presented, no reasonable juror could find that Plaintiff was substantially harmed by the delay in his medical care.  Because Plaintiff has failed to show that Defendants violated a constitutional right, Defendants Thompson and Meyer are entitled to qualified immunity.  *Saucier*, 533, U.S. at 200-01; *see also Pearson*, 129 S. Ct. at 818.  Accordingly, the Court recommends that summary judgment be entered in favor of Defendants Thompson and Meyer.

### IV. Conclusion

For the foregoing reasons, I respectfully **RECOMMEND** that Defendants' Motion for

Summary Judgment [#81] be **GRANTED** and that Defendant Thompson's Motion for Summary Judgment [#88] be **GRANTED**.  Given that Plaintiff has failed to carry his burden and establish any material disputes of fact pertaining to his alleged constitutional violations, I find that Plaintiff is not entitled to any form of relief requested in his Amended Complaint. Accordingly, I FURTHER **RECOMMEND** that the case be **DISMISSED with prejudice**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of the Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives the appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  August 10, 2011

BY THE COURT:

s/ Kristen L. Mix_____
United States Magistrate Judge
Kristen L. Mix